UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARINA KIRYUSHCHENKOVA,<br><br>              Plaintiff,<br><br>       v.<br><br>AMERICAN FAMILY INSURANCE COMPANY, an insurance company,<br><br>              Defendant. | CASE NO. 20-5842 RJB<br><br>ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND VARIOUS OTHER MOTIONS |

      This matter comes before the Court on American Family Insurance Company's ("American Family") Motion for Partial Summary Judgment re: Bad Faith and Extracontractual Claims (Dkt. 56), the Plaintiff's Motion to Strike (Dkt. 58), the Plaintiff's Motion for a Continuance (Dkt. 58), and American Family's Motion to Strike (Dkt. 61). The Court has considered the pleadings filed regarding the motions and the remaining file.

      This case arises from a 2017 car accident in which the Plaintiff was hit at an intersection in Vancouver, Washington. Dkt. 13. At the time of the accident the Plaintiff had a policy with American Family that included underinsured motorist ("UIM") coverage. *Id*. After the other

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND VARIOUS OTHER MOTIONS - 1

driver's insurance limits were exhausted, American Family evaluated Plaintiff's claim for coverage under the UIM portion of her policy. *Id.* In this lawsuit, the Plaintiff asserts that American Family did not properly handle her claim. *Id.* She claims it breached their contract, violated Washington's Insurance Fair Conduct Act ("IFCA"), including various provisions of the Washington Administrative Code ("WAC"), violated Washington's Consumer Protection Act ("CPA"), acted in bad faith, was negligent, and caused her emotional distress. *Id.*

American Family now moves for partial summary judgment on the Plaintiff's bad faith and extra contract claims. Dkt. 56. For the reasons provided below, the motion (Dkt. 56) should be denied as to all claims except the Plaintiff's negligence claim. The motion (Dkt. 56) should be denied without prejudice as to the Plaintiff's negligence claim.

## I.   FACTS

### A. ACCIDENT, LAWSUIT AGAINST TORTFEASOR, AND CLAIM WITH AMERICAN FAMILY

On July 12, 2017, Jameson Clifford and the Plaintiff were involved in a motor vehicle accident. Dkt. 57-1 at 56. The Plaintiff was driving a 2007 Toyota Camry and Mr. Clifford was in a truck. *Id.* Mr. Clifford failed to yield to the Plaintiff as she drove through the intersection, hit her, and pushed her car into a large rock. Dkt. 57-1 at 58. According to the police report, "all occupants were transported to the hospital for precautionary reasons." Dkt. 57-1 at 58.

At the time of the accident, the Plaintiff's policy with American Family provided UIM coverage in the amount of $50,000/$100,000 each person/accident as well as underinsured property damage ("UMPD") coverage for $10,000. Dkt. 57-1 at 14. The policy did not include personal injury protection ("PIP") coverage because the Plaintiff waived that coverage. Dkt. 57-1 at 13 and 41-42.

1   On July 12, 2019, the Plaintiff filed a lawsuit against Mr. Clifford in connection with the
2   accident, *Kiryushchenkova v. Jameson,* Clark County, Washington Superior Court case number
3   19-2-01355-06.  Dkt. 57-1 at 63-65.  He was insured for $50,000/$100,000 per person/accident
4   for bodily injury and had $50,000 in property damage coverage when the accident occurred.
5   Dkt. 57-1 at 61.

6   On February 10, 2020, the Plaintiff's lawyer sent a letter to American Family informing it
7   that although a lawsuit was filed against Mr. Jameson, it was anticipated that the Plaintiff's
8   damages were going to exceed Mr. Jameson's policy limits.  Dkt. 57-1 at 67.  The letter
9   informed American Family that she intended to seek additional coverage for personal injuries
10  and non-economic damages from American Family.  *Id.*  She requested that it open an UIM
11  claim and provide consent for her to settle with Mr. Jameson for his policy limits.  *Id.*

12  The next day, February 11, 2020, Plaintiff's lawyer sent American Family a second letter,
13  outlining the Plaintiff's injuries, medical treatment, and the total of economic damages she
14  alleges she sustained as a result of the accident in the amount of $17,994.27.  Dkt. 57-1 at 69-78.
15  That letter states that the Plaintiff "currently is exhibiting no symptoms and feels she has fully
16  recovered from her injuries."  Dkt. 57-1 at 78.

17  American Family opened a UIM claim and gave the Plaintiff its consent to settle with Mr.
18  Jameson.  Dkt. 57-1 at 51.  On March 6, 2020, the Plaintiff settled the case with Mr. Jameson for
19  his policy limits of $50,000.  Dkt. 57-1, at 80.

20  On April 3, 2020, the Plaintiff demanded of American Family the policy limits of $50,000.
21  Dkt. 57-1 at 83-84.  American Family began reviewing the Plaintiff's records and claim.  Dkt.
22  57-1 at 45.  It reached out to the Plaintiff's lawyer and let him know that the medical damages
23  claimed were too low based on the submissions.  Dkt. 57-1 at 48.

24

B.  **PLAINTIFF'S MEDICAL RECORDS**

On April 8, 2020, Adjuster Snobeck reviewed the Plaintiff's medical records in her claim diary notes. Dkt. 57-1 at 45-47. American Family filed these notes in the record. *Id.* It also filed some of the Plaintiff's medical records it had when making its decision on her claim (Dkt. 57-2 at 2-38) in this case. Accordingly, the following recounts facts primarily from her medical records, with a few citations to the claim diary notes.

Right after the July 12, 2017 vehicle accident, paramedics observed the Plaintiff walking around the scene. Dkt. 57-2 at 35. She complained of neck and back pain and denied loss of consciousness. *Id.* She was transported by ambulance to the hospital. *Id.*

According to the claim diary notes, in the emergency room, the Plaintiff was seen with symptoms of neck and back pain; she denied other symptoms, including of loss of consciousness. Dkt. 57-1 at 45. CT cervical spine images were unremarkable. *Id.* She was diagnosed with cervical strain. *Id.*

On July 20, 2017, the Plaintiff was seen by Richard Ellis, DO for back, left shoulder, and neck pain and headaches. Dkt. 57-2 at 2. Dr. Ellis diagnosed her with various neck and back strains and headache. *Id*. He prescribed medications and referred her to a chiropractor. *Id.*

On August 14, 2017, the Plaintiff saw Aileen Wolf, RN, in Dr. Ellis' office. Dkt. 57-2 at 8. The Plaintiff complained of headache, dizziness, nausea, and blurred vision. *Id*. Wolf opined that the Plaintiff had "probable post-concussion syndrome," and recommended brain rest. *Id* at 9. The Plaintiff agreed to a follow up appointment with Dr. Ellis. *Id.*

Dr. Ellis saw Plaintiff on August 23, 2017 for headaches and nausea. Dkt. 57-2 at 11-13. He noted she had nausea, blurred vision, dizziness, and headaches. *Id.* He diagnosed the Plaintiff

with headache and post-concussion syndrome, in addition to stains of her neck and back. *Id.* The CT head scan he ordered showed no abnormality. Dkt. 57-1 at 46.

Beginning around July 26, 2017, the Plaintiff begin seeing Anatoliy Vergulyanets, DC, for 30 sessions of chiropractic therapy. *See* Dkts. 57-1 at 46 and 57-2 at 30. The record does not include treatment notes for each of these visits, but some useful information can be gleaned from American Family's claim diary notes on the visits.

American Family's claim diary indicates that at her first visit, the Plaintiff reported to Dr. Vergulyanets that she didn't think she lost consciousness but hit her head on the door during the accident. Dkt. 57-1 at 46. She reported neck pain, back pain, headache, shoulder pain, dizziness. *Id.* The Plaintiff was diagnosed with strains, including to the shoulder. *Id.* On July 28, 2017, Dr. Vergulyanets added a new diagnosis of concussion without loss of consciousness. *Id.* Eventually in her course of treatment, Dr. Vergulyanets ordered an MRI on her left shoulder that showed calcific tendinitis in supraspinatus. *Id.* She continued to receive treatment for months. *Id.* The last treatment note submitted to American Family from Dr. Vergulyanets was dated December 22, 2017 and is in the record. Dkt. 57-2 at 30. He noted that the Plaintiff reported she felt about 50% improved in her left shoulder. *Id.* While Dr. Vergulyanets noted that "all other injuries are 100% resolved," including "headache," he also stated that the Plaintiff was still reporting changes in her vision. *Id.* Those changes included "worsening sight when reading," worsening night vision, and that her vision had not improved since the accident. *Id.* In addition to diagnosis related to her neck and back injuries, Dr. Vergulyanets diagnosed her with "concussion without loss of consciousness . . . with following post concussive symptoms: vision changes," and calcific tendinitis of the left shoulder. *Id.* at 32. In terms of the type of treatment he offered, he opined that she had reached "maximum medical improvement" and that she may

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND VARIOUS OTHER MOTIONS - 5

need around eight visits to his office for the next year. *Id.* at 33. He referred her to physical therapy for her left shoulder. *Id.*

On January 2, 2018, the Plaintiff returned to Dr. Ellis for left shoulder pain. Dkt. 57-2 at 24. She was diagnosed with left shoulder tendinitis and joint pain. *Id.* The Plaintiff declined a steroid injection and was prescribed physical therapy. *Id.* On January 9, 2018, the Plaintiff was seen by Dr. Ellis and received an injection of Lidocaine in her left shoulder. Dkt. 57-2 at 26-27. The last treatment note in the record, dated February 8, 2018, is from a physical therapist indicating that the Plaintiff did not appear for her appointment. Dkt. 57-2, at 28.

### C. AMERICAN FAMILY'S DECISION AND PLAINTIFF'S RESPONSE

On April 9, 2020, American Family wrote the Plaintiff, informing her that it valued her claim as follows: medical bills - $19,618.00, lost wages - $1,428.00, mileage - $293.00, and general damages - $20,000.00 for a total of $41,339.00. Dkt. 57-1, at 86. It concluded that due to the offset from Mr. Jameson's (original tortfeasor) policy limits of $50,000, it did not owe her any more. *Id.* American Family asked that if she had additional medical information to please forward it and advised her that if she disagreed with its position, it would be willing to engage in arbitration with a $50,000 cap, consistent with the policy. *Id.*

In her evaluation of the Plaintiff's injuries, American Family's adjuster, Jennifer Snobeck, testified that she considered the nurse's evaluation that indicated that the Plaintiff had "probable post-concussion syndrome." Dkt. 59 at 10. Adjuster Snobeck stated that she noted that the Plaintiff reported symptoms of post-concussion syndrome to her care providers. *Id.* Adjuster Snobeck considered post-concussion syndrome a possibility, but noted that there wasn't any specific treatment for that or referrals for it. Dkt. 62-1 at 7. Adjuster Snobeck also considered that it was "probable" that the Plaintiff's vision issues were related to the accident. Dkt. 59 at

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND VARIOUS OTHER MOTIONS - 6

13. Adjuster Snobeck noted that the Plaintiff had stopped treatment. Dkt. 59 at 16. She did not request any additional information about the Plaintiff's concussion or vision issues. *Id*.

Adjuster Snobeck acknowledges that at the time of her assessment, she did not find a medical record that the Plaintiff's left shoulder injury was fully resolved or request such a record. Dkt. 59 at 11. She took note that according to the Plaintiff's chiropractor, treatment was finished. *Id*. When she did her evaluation, Adjuster Snobeck did not consider the left shoulder injury to be fully resolved. Dkt. 59 at 11.

Adjuster Snobeck also testified that at the time she made her evaluation, she assumed that all the Plaintiff's injuries had resolved. Dkt. 62-1, at 6. She points out that the Plaintiff did not let her know of any additional treatment. *Id*. Adjuster Snobeck did not value the Plaintiff's injuries separately; they were in a lump sum. Dkt. 59 at 10.

As to general damages, Adjuster Snobeck explained that she considered the Plaintiff's likely pain and suffering, whether activities of daily living were affected, and the severity of the accident. Dkt. 59 at 14. She then based her assessment on her own experience in evaluating claims over the last six years and what she felt was fair and reasonable. Dkt. 59 at 13. While she didn't look at them all the time, she was also aware of jury verdicts and arbitration awards given in other cases. Dkt. 59 at 14.

On April 20, 2020, the Plaintiff sent American Family and the Washington State Insurance Commissioner, a notice pursuant to IFCA, RCW 48.30.015 ("IFCA Notice"). Dkt. 57-1 at 88-89. In that IFCA Notice, she argues, in part, that American Family did not properly assess damages related to her concussion or post-concussion syndrome and did not schedule either an individual medical exam or her deposition. *Id.*

On April 27, 2020, American Family's claims adjuster responded to the Plaintiff's April 20, 2020 notice and explained:

> You sent a UIM demand dated April 3, 2020. I reviewed all of the documentation you provided. Per the ambulance report of July 12, 2017, it was noted that Mrs. Kiryushchenkov was ambulatory at the scene, denied loss of consciousness, was alert and oriented, had a Glasgow Coma Scale of 15, that no air bag deployed and that she complained of neck and back pain at a pain scale of 5/10. Per the emergency room records of July 12, 2017, it was noted that Mrs. Kiryushchenkov hit her head on the seat but had no loss of consciousness and that she had neck pain, back pain and left foot pain. She was diagnosed with a cervical strain and discharged in stable condition. Per the records from Kaiser Permanente on July 20, 2017, it was noted that Mrs. Kiryushchenkov had upper back pain, shoulder pain, neck and a headache and that she did not have any weakness, numbness, nausea, vomiting or vision changes. She was diagnosed with cervical strain, thoracic strain and headache and prescription medications Norco and Robaxin were ordered. On August 14, 2017, per the medical records from Kaiser Permanente, it was noted that Mrs. Kiryushchenkova had a headache, dizziness, blurred vision and had been taking the medication. She was diagnosed with "probable" post-concussion syndrome. Per the MRI report of August 17, 2017, the report indicates that there was no evidence of an acute intracranial abnormality. Per the chiropractic records of December 22, 2017, it was noted that Mrs. Kiryushchenkova felt 50% improvement in her left shoulder and that all other injuries were 100% resolved.
>
> I completed my valuation based on the medical documentation provided to me and I considered the diagnosis of the post-concussion syndrome and all of the medical specials. I shared my valuation with you on April 9, 2020. I did not feel that an IME was necessary for her post-concussion syndrome since it was noted that all other injuries, other that her left shoulder complaint, had resolved. I did not find included in your demand, any of the medical providers referring Mrs. Kiryushchenkova to a neurologist or any mention of continuing post-concussion syndrome issues.

Dkt. 57-1 at 91.  American Family again asked if there was additional medical information and reminded the Plaintiff of the possibility of arbitration.  *Id.*

On June 25, 2020 and July 23, 2020, American Family reached out to the Plaintiff and inquired about whether she wished to engage in arbitration.  Dkt. 57-1 at 94 and 96.  American Family again reached out to the Plaintiff on August 5, 2020, informing her that if she did not

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND VARIOUS OTHER MOTIONS - 8

contact it, it would consider the file closed. Dkt. 57-1 at 96. The Plaintiff did not provide any additional medical information to American Family or respond to its offer to arbitrate.

This case was filed in Clark County, Washington Superior Court on August 10, 2020 and removed to this Court on August 21, 2020. Dkt. 1. The Plaintiff seeks damages, including treble damages, attorneys' fees and costs. Dkt. 13.

The Plaintiff testified that other than neck and back pain, she experienced and continues to experience left shoulder pain, headaches, and vision issues she contends are related to the car accident. Dkt. 59 at 25-27. She also experiences stress when she drives now. Dkt. 59 at 30. According to the Plaintiff, the accident caused her emotional stress, as did the lawsuit related to the at-fault driver and American Family's failure to "pay any attention to [her] accident." Dkt. 59 at 33.

## II.  DISCUSSION

### A. WASHINGTON SUBSTANTIVE LAW AND FEDERAL PROCEDURAL LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)).

B. **MOTIONS TO STRIKE**

    1. <u>Plaintiff's Motion to Strike Exhibit H, and Portions of Exhibits M, N, and O of Rider Declaration</u>

The Plaintiff moves to strike Exhibit H of the Rider Declaration which is a letter her lawyer wrote on February 11, 2020 to American Family, outlining the Plaintiff's injuries, medical treatment, the total of economic damages she alleges she sustained as a result of the accident in and states that she was not having any symptoms and felt fully recovered at that time. (Dkt. 57-1 at 69-78). Dkt. 58.

For purposes of this motion only, a letter from the Plaintiff's lawyer (Exhibit H of the Rider Declaration) should be stricken. Rule of Evidence 408 generally prohibits admission of settlement documents "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." American Family has failed to show that an exception applies.

The Plaintiff moves to strike the portions of Exhibits M, N, and O (letters from American Family to Plaintiff) which request that if the Plaintiff has "any new medical documentation of information for consideration," to "please send it . . . for review," and remind the Plaintiff of the availability of arbitration, arguing that these overtures occurred after she sent her IFCA Notice and so are irrelevant to whether the claim was reasonably handled. Dkt. 58.

The Plaintiff's motion to strike these portions of Exhibits M, N, and O should be denied. They are of limited relevance, but the Plaintiff has failed to show that they are irrelevant.

    2. <u>American Family's Motion to Strike</u>

American Family moves to strike the Plaintiff's declaration (Dkt. 60) as not relevant. This pleading indicates that the Plaintiff saw an eye specialist in April 2021 (after her deposition and over a year after American Family's decision). Dkt. 60. It also attaches some bills. *Id.*

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND VARIOUS OTHER MOTIONS - 10

American Family argues that this declaration is not admissible because it is irrelevant, contains hearsay, and doesn't meet the requirements of expert testimony. Dkt. 61.

American Family's motion to strike the Plaintiff's declaration (Dkt. 61) should be denied. While it was considered, it is of minimal use in deciding the motion.

American Family also moves to strike paragraph three and the corresponding attached exhibit (which is Dr. Reski's opinion), paragraph six, and paragraph seven of Plaintiff's lawyer's declaration (Dkt. 59). Dkt. 61. Paragraph six repeats the request that this motion be continued until after the American Family's 30(b)(6) deposition and paragraph seven discusses discovery of case notes.

American Family's motion to strike paragraph three and the attached exhibit (Dkt. 61) should be denied although this paragraph and exhibit are of minimal use. American Family's motion to strike paragraph six and paragraph seven of Plaintiff's lawyer's declaration (Dkt. 61) should be granted. These paragraphs repeat arguments from the Response, but do not assist in deciding the motions.

**C. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

1 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**D. PLAINTIFF'S MOTION TO CONTINUE UNDER RULE 56(d)**

Under Fed. R. Civ. P. 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may . . . defer considering the motion or deny it." A party requesting relief pursuant to Rule 56(d) "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

The Plaintiff states that American Family's Rule 30(b)(6) deposition is set for May 18, 2022 and this deposition would be helpful in more thoroughly responding to American Family's motion for summary judgment on her CPA claim.

The Plaintiff's motion to continue the summary judgment motion (Dkt. 58) should be denied. As stated below, American Family's motion for summary judgment on the Plaintiff's CPA claim should be denied. Additional evidence is unnecessary to decide this motion.

**E. AMERICAN FAMILY'S MOTION FOR SUMMARY JUDGMENT - IFCA CLAIM**

Under IFCA, "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or benefits by an insurer may bring an action . . . to recover the actual damage," treble damages, costs and attorneys' fees. RCW 48.30.015 (1)-(2).

American Family's motion for summary judgment on Plaintiff's IFCA claim should be granted, in part, and denied in part. To the extent that the Plaintiff bases her IFCA claim by asserting that American Family denied her coverage when it valued her claim below the amount that she had already received from the original tortfeasor's insurance, her claim should be dismissed. American Family did not deny her coverage by stating that the policy did not cover the loss. Instead, it accepted coverage.

To the extent that the Plaintiff makes a claim for a denial of benefits, the motion for summary judgment (Dkt. 56) should be denied. By valuing her claim at less than $50,000, American Family essentially denied her benefits. While American Family points to *Perez-Crisanos v. State Farm Fire and Casualty Co.,* 187 Wash.2d 669 (2017) for the proposition that an IFCA claim cannot be based on claims handling but only on a claim for denial of coverage, that citation is unavailing. The statute's plain language states that IFCA claims can be based on an unreasonable denial of a payment of benefits. Moreover, the holding *Perez-Crisanots* was not so

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND VARIOUS OTHER MOTIONS - 13

limiting. In *Perez-Crisantos,* the Washington Supreme Court held that insureds have no private right of action under IFCA merely for certain WAC violations. The Court went on to specifically note that "IFCA explicitly creates a cause of action for first party insureds who were unreasonably denied a claim for coverage or **payment of benefits**." *Perez-Crisantos* at 680 (*internal quotation marks omitted*)(*emphasis added*).

There are issues of fact as to whether American Family unreasonably denied payments of benefits to the Plaintiff. At the time American Family denied her benefits, her medical records indicate that she had unresolved headaches, blurred vision, dizziness and left shoulder pain. While some portions of the medical record indicated that "all issues were resolved" other portions of the records indicated that she had ongoing issues. At a minimum, there are issues of fact as to whether American Family should have investigated those inconsistencies. American Family's assertion that it "considered" all diagnoses in its decision and concluded that they were resolved, does not unquestionably demonstrate that its decision was reasonable given the Plaintiff's medical records.

American Family argues that the Plaintiff's claim for an IFCA violation should also be dismissed because she cannot show that she was damaged by the denial. Dkt. 56. The Plaintiff testified at her deposition that American Family's treatment of her has caused her emotional stress. Dkt. 59 at 33. IFCA is "intended to protect insureds and provide additional remedies;" accordingly, its provision for "'actual damages' includes noneconomic damages." *Beasley v. GEICO Gen. Ins. Co.*, 2022 WL 1151426, at *12 (Wash. Ct. App. Apr. 19, 2022). The Plaintiff has pointed to evidence, if believed, that she was damaged by American Family's conduct.

American Family's motion for summary judgment on the Plaintiff's IFCA claim (Dkt. 56) should be denied.

## F. AMERICAN FAMILY'S MOTION FOR SUMMARY JUDGMENT - BAD FAITH CLAIM

In Washington, "[a]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003). "Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Id.,* at 485. Ordinarily, "[w]hether an insurer acted in bad faith remains a question of fact." *Id.* "Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Id.*

### 1. Duty and Breach

"[T]he public policy underlying UIM is creation of a second layer of floating protection for the insured." *Liberty Mut. Ins. Co. v. Tripp*, 144 Wn.2d 1, 13 (2001). "Coverage eligibility requires the insured to demonstrate that he or she is legally entitled to recover in tort from the underinsured motorist." *Tribble v. Allstate Prop. & Cas. Ins. Co.*, 134 Wn. App. 163, 168 (2006)(*internal quotation marks and citations omitted*). Washington law requires that "[t]he insurer must pay its insured's uncompensated damages until the underinsurance policy coverage is exhausted or until the insured is fully compensated, whichever occurs first." *Id.,* at 168-69.

UIM insurers, like American Family, owe a duty to "deal in good faith and fairly as to the terms of the policy and not overreach the insured, despite its adversary interest." *Ellwein v. Hartford Acc. & Indem. Co.,* 142 Wn.2d 766, 781 (2001)(*as amended*)(*overruled on other grounds by Smith v. Safeco Ins. Co.*, 150 Wn.2d 478 (2003)). In order to establish bad faith, an insured must show the breach of that duty was "unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 132 (2008).

As stated above, the Plaintiff has pointed to sufficient issues of fact from which to conclude that American Family acted unreasonably when it decided not to pay her benefits under her policy. Reasonable minds could reach various conclusions about American Family's actions based on the evidence in the record.

### 2. Damages Proximately Caused by Breach

"Tort claims for the breach of the duty of good faith, also known as insurance bad faith claims, allow for recovery of expenses; consequential damages; and general tort damages, including noneconomic damages such as emotional distress caused by the breach of the duty of good faith." *Beasley*, at 9.

The Plaintiff testified at her deposition that American Family's decision to deny her benefits has caused her emotional distress. Dkt. 59 at 33. She has pointed to sufficient issues of fact to defeat American Family's motion for summary judgement on her bad faith claim. The motion for summary judgment on Plaintiff's bad faith claim (Dkt. 56) should be denied.

**G. AMERICAN FAMILY'S MOTION FOR SUMMARY JUDGMENT - CPA CLAIM**

To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.*, at 786.

As to the first CPA factor, the Washington State Supreme Court recently noted that "[i]t is well established that insureds may bring private CPA actions against their insurers for breach of

the duty of good faith or for violations of Washington insurance regulations." *Peoples v. United Servs. Auto. Ass'n*, 96931-1, 2019 WL 6336407, at *3 (Wash. Nov. 27, 2019).

There are issues of fact as to whether American Family violated its duty of good faith. The Plaintiff has pointed to sufficient issues of fact as to the first CPA factor. Regarding the second and third CPA factors, it is undisputed that American Family's acts occurred in trade or commerce and the Washington "legislature has expressly declared that the insurance business is one 'affected by the public interest.'" *Peoples,* at 3. Further, regarding the fourth and fifth CPA factors causation and damages, the Plaintiff has demonstrated that she was damaged by American Family by being forced to spend money investigate American Family's alleged unfair acts or practices. "Expenses incurred in investigating an unfair or deceptive act can establish an injury under the CPA." *Kosovan v. Omni Ins. Co.*, 19 Wn. App. 2d 668, 700 (2021). This includes, but is not limited to, the cost of postage the Plaintiff "expended in submitting a notice to the insurance commissioner [about her] claim," "because it was related to investigating the unfair act or practice." *Id.,* at 701. The Plaintiff has shown that there are issues of fact as to her CPA claim. American Family's motion for summary judgment on the Plaintiff's CPA claim (Dkt. 56) should be denied.

### H. AMERICAN FAMILY'S MOTION FOR SUMMARY JUDGMENT - EMOTIONAL DISTRESS CLAIM

American Family moves for summary judgment on the Plaintiff's claim for emotional distress arguing that emotional distress damages are not available on claims for breach of contract. Dkt. 56. The Plaintiff's IFCA violations and bad faith claims should not be dismissed on summary judgment. Recovery for emotional distress damages are potentially available to the Plaintiff. Accordingly, American Family's motion for summary judgment on the Plaintiff's emotional distress claim (Dkt. 56) should be denied.

I. **AMERICAN FAMILY'S MOTION FOR SUMMARY JUDGMENT – NEGLIGENCE CLAIM**

While American Family moves for summary judgment on all extra-contract claims, it does not meaningfully address Plaintiff's claim for negligence. The Plaintiff also does not discuss her negligence claim. To the extent that American Family moves for summary judgment on that claim (Dkt. 56) it should be denied without prejudice.

J. **OTHER MATTERS**

Trial is scheduled to begin on June 13, 2022. All deadlines remain.

### III.   ORDER

It is **ORDERED** that:

- The Plaintiff's Motion to Strike (Dkt. 58) **IS GRANTED, IN PART, AND DENIED, IN PART, as stated herein**;

- American Family's Motion to Strike (Dkt. 61) **IS GRANTED, IN PART, AND DENIED, IN PART, as stated herein**;

- The Plaintiff's Motion for a Continuance (Dkt. 58) **IS DENIED**; and

- American Family's Motion for Partial Summary Judgment re: Bad Faith and Extracontractual Claims (Dkt. 56) **IS DENIED,** except as to Plaintiff's claim for negligence, which **IS DENIED WITHOUT PREJUDICE**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 16th day of May, 2022.

_____
ROBERT J. BRYAN
United States District Judge